IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| IN RE: AHERN RENTALS, INC., ) | Case No. 20-02945-MD-C-BP |
| TRADE SECRET LITIGATION. ) | This Document Relates to |
| ) | Case No. 20-04141-CV-C-BP |

## ORDER AND OPINION GRANTING IN PART
## DEFENDANTS' MOTIONS TO DISMISS

This MDL arises from a dispute between two companies in the equipment rental industry. Generally, Ahern Rentals, Inc. ("Ahern") alleges that EquipmentShare.com, Inc. ("EquipmentShare") has been hiring away its employees and in the course of doing so it (and the employees) committed various torts and other wrongful acts.

Ahern filed this suit in the Eastern District of California against EquipmentShare and two of Ahern's former employees who later worked for EquipmentShare, Matthew Allen and Derrick Torres. The case was assigned to the Honorable Morrison C. England, Jr., United States District Judge for that District. On June 29, 2020, Judge England granted Defendants' Motions to Dismiss but allowed Ahern twenty days to file an amended complaint. Ahern filed its First Amended Complaint on July 20, 2020. Defendants filed Motions to Dismiss, but the case was transferred to the MDL before the motions were fully briefed. After they became fully briefed, the undersigned granted the motions in part and denied them in part. (Doc. 25.)[1] As relevant to the matters now before the Court, that Order dismissed federal and state claims alleging misappropriation of trade secrets and state claims alleging intentional interference with contracts and intentional interference with prospective economic advantage, and held that all other claims stated a claim for which relief could be granted. The trade secret claims were dismissed with prejudice because Ahern "failed to heed Judge England's recommendations with respect to" pleading them properly but the claims

---

[1] All references to documents filed with the Court are documents filed in the master MDL case.

for intentional interference with contracts and intentional interference with prospective economic advantage were dismissed without prejudice. (Doc. 25, p. 20.)[2]

Ahern filed its Second Amended Complaint, (Doc. 238), which reasserts the claims the Court did not dismiss and attempts to replead the two intentional interference claims. EquipmentShare has filed a Motion to Dismiss, seeking dismissal of the intentional interference claims and one claim that the Court previously declined to dismiss. Allen and Torres have filed their own Motion to Dismiss, seeking dismissal of the intentional interference claims and another claim that the Court previously declined to dismiss. For the reasons discussed below, both EquipmentShare's motion, (Doc. 279), and the Allen/Torres motion, (Doc. 280) are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

As stated earlier, both Ahern and EquipmentShare are in the equipment rental industry. (Doc. 238, ¶ 10.) Allen served as a sales representative for Ahern from June 4, 2002 to June 3, 2019, and Torres worked as an Ahern branch manager from July 11, 2013 to February 2, 2016. (*Id.* at ¶¶ 8, 9.) Both Allen and Torres subsequently went to work for EquipmentShare.

During their employment with Ahern, Allen and Torres had access to "Ahern Confidential Information" to perform their duties as Ahern employees. (*Id.* at ¶¶ 27, 28.) Ahern Confidential Information consists of:

> Ahern's customer lists, Ahern's equipment prices for particular customers, Ahern's customer pricing strategies, Ahern's customer relationship management ("CRM") information relating to its clients such as identities and preferences for customer decision makers, Ahern's project pricing structures, Ahern's actual and prospective employee rosters, Ahern's internal compensation strategies regarding incentive plans and payouts, Ahern's internal human resources policies and practices, Ahern's internal details and evaluations of staff,—including strengths and weaknesses—Ahern's records of customer communications (including logs), and Ahern's competitive business techniques[.]

---
[2] All page numbers are those generated by the Court's CM/ECF system.

2

(*Id.* at ¶ 21.) Ahern Confidential Information "is non-public information" that "is not generally known in the industry or publicly available" and this confidentiality "enables Ahern to generate great economic benefit from Ahern Confidential Information." (*Id.*) Ahern also takes steps to limit access, use and dissemination of Ahern Confidential Information. (*E.g., id.* at ¶¶ 22-23, 31.) Ahern Confidential Information is comprised of, and collectively constitutes, trade secrets. (*Id.* at ¶¶ 25-26.)

Ahern claims that Allen and Torres took and retained Ahern Confidential Information. (*Id.* at ¶¶ 33-35, 40.) All three Defendants then "use[d] Ahern Confidential Information against Ahern so as to cause damage to Ahern's business operations, client relationships, and market share. At the same time Defendants attempted to use Ahern Confidential Information to sow discord and insecurity among Ahern's employees . . . ." (*Id.* at ¶ 38; *see also id.* at ¶¶ 39-42.) However, allegations about these incidents are very limited and will be discussed in Part II of this Order. Other allegations from the Second Amended Complaint will also be discussed as necessary.

As stated earlier, the Second Amended Complaint reasserts the claims the Court did not dismiss and attempts to replead the two intentional interference claims. Specifically, the Second Amended Complaint contains the following nine counts:

- Count I – Breach of Contract against Torres;
- Count II – Intentional Interference With Contract against all Defendants;
- Count III – Intentional Interference with Prospective Economic Advantage against all Defendants;
- Count IV – Breach of Fiduciary Duty against Torres;
- Count V – Breach of the Duty of Loyalty against Allen and Torres;

3

- Count VI – Breach of the Duty of Loyalty (California Faithless Servant Doctrine) against Allen and Torres;

- Count VII – Unfair Business Practices in violation of the California Business and Professions Code § 17200 *et seq.*, against all Defendants;

- Count VIII – Violation of California Penal Code § 502, against Allen and Torres; and

- Count IX – Accounting against all Defendants.[3]

EquipmentShare has filed a Motion to Dismiss, seeking dismissal of Counts II, III and VII. Allen and Torres have filed their own Motion to Dismiss, seeking dismissal of Counts I, II and III. The Court resolves the parties' arguments below.

## II. DISCUSSION

Defendants bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept

---

[3] "Accounting" is a remedy and not a cause of action.

4

Case 2:20-md-02945-BP   Document 344   Filed 04/21/21   Page 4 of 15

as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### A. Count I - Breach of Contract against Torres

The Second Amended Complaint alleges that during his employment with Ahern, Torres entered into an agreement "in which he agreed to safeguard Ahern Confidential property . . . and would safeguard Ahern information and not transfer information improperly." (Doc. 238, at ¶ 45.) Count I alleges that Torres breached this agreement by (1) accessing Ahern's computer network and emailing "at least one internal Ahern document to his personal e-mail account," (2) taking possession of other information, and (3) using information taken from Ahern for his personal benefit. (*Id.* at 47.)

These are the same allegations that were presented to support the breach of contract claim in the Amended Complaint. Torres sought dismissal, contending that the pleading was inadequate; the Court disagreed. (Doc. 25, p. 5.) Torres now seeks dismissal for a different reason: he now argues that the breach of contract claim is barred by § 16600 of the California Business and Professions Code.[4] The Court disagrees.

Section 16600 states that, with exceptions that are not relevant here, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." However, the contract provisions that form the basis for Count I do not restrain Torres's ability to engage in a lawful profession, trade, or business – they require him to take certain actions, and refrain from taking certain actions, with respect to Ahern's property/information. *See Golden v. California Emergency Physicians Med. Grp.,* 896 F.3d 1018,

---

[4] Torres occasionally refers to the statute number as 16660, but this appears to be a typographical error.

1021-24 (9th Cir. 2018) (discussing § 16600 at length and describing a "restraint" as something that "significantly or materially impedes a person's lawful profession, trade, or business [such] that its enforcement would implicate the policies of open competition and employee mobility that animate section 16600."). The provision at issue here does not implicate § 16600. *See Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1270 (2008) ("Section 16600 does not authorize employees to compete with former employers by stealing their confidential customer information.").

Torres contends that the California Court of Appeals' decision in *AMN Healthcare, Inc. v. AYA Healthcare Servs., Inc.*, 28 Cal. App. 5th 923 (2018), "is directly on point." (Doc. 280, p. 10.) There, an employer (AMN Healthcare) sued, *inter alia*, former employees for breaching a contract provision barring them from soliciting the departure of other AMN Healthcare employees. Torres contends that "[t]he basis for Ahern's breach of contract claim against [him] is identical to the basis for the plaintiff's claims in *AMN Healthcare*; namely, that a former employee, i.e., Torres, is improperly competing with Ahern by using Ahern's confidential information in connection with his employment at EquipmentShare." (Doc. 280, p. 11.) But this is not true – Count I does not allege Torres breached a contract by soliciting employees or customers, nor is it any way based on Torres's solicitation of employees or customers. *AMN Healthcare* is inapplicable and § 16600 provides no basis for dismissing Count I.

## B. Count II – Intentional Interference With Contract

Count II alleges that Defendants intentionally interfered with Ahern's contractual relationships with customers. Defendants contend that the claim must be dismissed because (1) it is preempted by the California Uniform Trade Secrets Act, ("CUTSA"), and (2) the Second Amended Complaint does not allege facts that plausibly demonstrate Defendants intentionally interfered with contracts. The Court agrees with both contentions.

6

### *1. Preemption Under CUTSA*

In summary, Defendants' preemption argument is that (1) Count II is based on the misappropriation of Ahern's trade secrets, (2) CUTSA provides the exclusive remedy for misappropriations of trade secrets, so (3) Count II is preempted. To address this argument, the Court begins by examining CUTSA.

CUTSA provides a cause of action for misappropriation of trade secrets. CAL. CIV. CODE § 3426.3. Misappropriation includes "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *Id*. § 3426.1(b)(1). Misappropriation also includes the use of a trade secret by someone who knows or has reason to know that the trade secret was misappropriated or derived from a person who owed a duty to maintain the trade secret's secrecy. *Id*. § 3426.1(b)(2). A trade secret is information (including a compilation of information) that (1) "[d]erives economic value . . . from not being generally known to the public or to other persons" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id*. § 3426.1(d).

CUTSA also contains a preemption provision. *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009) (citing CAL. CIV. CODE § 3426.7). The preemption provision "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation [but] at the same time, § 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation." *Id*. Accordingly, claims are preempted where they are "based entirely on the same factual allegations that form the basis of [a] trade secrets claim." *Id*. at 955 (quotation omitted). But claims are not preempted if they are not based on allegations that constitute a misappropriation of trade secrets. CAL. CIV. CODE § 3426.7(b)(2).

Defendants describe Count II as alleging that they intentionally interfered with Ahern's contracts by using Ahern's misappropriated trade secrets, so they contend that Count II is preempted by CUTSA. Ahern does not dispute that Count II would be preempted if Defendants' description of Count II is accurate but contends that Count II is based on other, different conduct. So the critical question is: what conduct forms the basis for Count II? The only insight Count II itself provides is that

> Plaintiff is informed and believes, and on that basis alleges, that Defendants intentionally and knowingly disrupted and interfered with Ahern's contractual relationships with customers (including McKinley Equipment Corp. and Nationwide Electrical Contractors), and knew that their conduct was certain or substantially certain to disrupt Ahern's contractual relationship with its customers.

(Doc. 238, at ¶ 52.) Count II does not explain *how* Defendants "disrupted and interfered" with Ahern's contractual relationships; it just asserts, in conclusory fashion, that they did.

As discussed in Part I, the Second Amended Complaint's general allegations repeatedly accuse Defendants of taking and using Ahern Confidential Information to injure Ahern's business relationships – but Ahern Confidential Information constitutes a trade secret under CUTSA. In describing Ahern Confidential Information, the Second Amended Complaint alleges all of the facts necessary to make it a trade secret under § 3426.1(d): it is non-public information that generates economic value from being non-public, and Ahern takes active steps to preserve it secrecy. (*Id.* at ¶¶ 21-23, 31.) The Second Amended Complaint also explicitly attaches the label "trade secret" to Ahern Confidential Information. (*Id.* at ¶¶ 25-26.) Thus, if Count II is based on anything, it is based on Defendants' alleged use of misappropriated trade secrets – which means that it is preempted by CUTSA.

As stated above Ahern contends that Count II is based on conduct unrelated to misappropriation of trade secrets, but for support it relies on allegations made in the context of

completely different counts. The Court does not believe that Ahern can (as it is attempting to do) support the viability of Count II by relying on allegations made specifically for Count V; that is not a fair or logical way to read or interpret Count II. Moreover, the allegations Ahern points to from other counts do not support Count II or clarify that Defendants tortiously interfered with Ahern's contracts with customers by means other than using misappropriated trade secrets. For instance:

- In Count V (breach of duty of loyalty) the Second Amended Complaint alleges that Allen and Torres "use[d] other forms of non-trade secret Ahern property to facilitate their personal benefit and not the benefit of Ahern, and in fact with the intent of using it against Ahern's interest." (*Id*. at ¶ 75.) But Ahern does not (1) identify the non-trade secret property Allen and Torres allegedly used or (2) allege that any Defendant used non-trade secret information to interfere with Ahern's contracts.

- That paragraph also alleges that Allen and Torres "solicit[ed] Ahern Employees to leave Ahern and go to work for ES, with the intention of diverting not only key employees, but also diverting business opportunities and client relationships away from Ahern." (*Id*.) While this allegation may plausibly suggest a breach of the duty of loyalty Allen and Torres owed to Ahern, it does not plausibly suggest conduct that supports a claim for intentional interference with contracts. And it says nothing about EquipmentShare.

- In Count VII (unfair business practices) Ahern alleges that Defendants "engaged in a scheme to interfere with Ahern's contracts and economic advantage, to sow discord among Ahern's employees through a disparaging solicitation campaign, and to take market share and personnel from Ahern through the use of former employees who acted against Ahern while still employed by Ahern." (*Id*. ¶ 86.) This alleges conduct directed to Ahern's

9

contracts with employees and does not describe any conduct that interfered with Ahern's contracts with customers.

- In Count VII Ahern also alleges that Defendants "conspired and acted . . . to interfere with Ahern's existing business relationships with its employees and customers." (*Id*. ¶ 87.) But this allegation does not establish what means were utilized, much less demonstrate that the means utilized were anything other than the use of Ahern Confidential Information (i.e., trade secrets) as alleged in the Second Amended Complaint's general allegations.

The best possible interpretation of Count II is that Defendants allegedly used misappropriated trade secrets to interfere with Ahern's contracts with its customers. This claim is preempted by CUTSA, so Count II must be dismissed.

### *2. Sufficiency of the Allegations*

Defendants argue that Count II must be dismissed even if it is not preempted because it is not adequately pleaded. Ahern contends that Count II satisfies the requirements of *Iqbal* and *Twombly*. The Court agrees with Defendants.

Portions of the Court's preemption discussion are also relevant on this issue. To state a claim for intentional interference with a contract, Ahern must allege "1) the existence of a valid contract between plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage." *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003) (*citing Quelimane Co. v. Stewart Title*, 960 P.2d 513, 530 (Cal. 1998)). But Count II fails to allege several of these elements in sufficient detail to satisfy *Iqbal* and *Twombly*. First, Count II alleges, in conclusory fashion, "that Defendants intentionally and knowingly disrupted and

10

interfered with Ahern's contractual relationships with customers (including McKinley Equipment Corp. and Nationwide Electrical Contractors)," (Doc. 238, ¶ 52), but this is just a formulaic recitation of the tort's third element and is therefore insufficient. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555 (cleaned up), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Count II only reiterates the third element – unless, of course, one looks outside of Count II. But doing so brings Ahern right back to the difficulty in identifying the conduct of Defendants that Count II is based on. For the reasons discussed in Part II(B)(1):

- Count II cannot be based on Defendants' use of misappropriated trade secrets,
- the conduct described in paragraph 75 in connection with Count V does not satisfy the pleading requirements for Count II because it does not describe any conduct Defendants took with respect to Ahern's contracts with customer contracts (or any conduct by EquipmentShare),
- the conduct described in paragraph 86 in connection with Count VII also does not involve Ahern's contracts with customers, and
- the conduct described in paragraph 87 in connection with Count VII is just as conclusory as Count II itself.

For these reasons, Count II does not adequately allege that Defendants engaged in intentional acts designed to induce a breach or disruption Ahern's contractual relationship with customers.

Count II also does not adequately allege the fourth element, which requires that there be an actual breach or disruption in Ahern's contractual relationship with a customer. In dismissing this claim as it appeared in the First Amended Complaint, the Court held the pleading was insufficient because it did "not specify any actual contracts with customers . . . that were interfered with or affected by Defendants." (Doc. 25, p. 10.) Count II now states that Defendants "disrupted and interfered with" Ahern's contractual relationships with . . . McKinley Equipment Corp. and Nationwide Electrical Contractors," (Doc. 238, ¶ 52), but this is another inadequate conclusion. Were the contracts terminated? Were the contracts breached? Count II provides no information that plausibly suggests disruption or interference occurred; it simply declares that such occurred and in that way it does not "nudge the claim across the line from conceivable to plausible" as required by *Iqbal* and *Twombly*. *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015) (quotation omitted); *see also Iqbal*, 556 U.S. at 680.

### *3. Conclusion*

For these reasons, the Court concludes that Count II is preempted by CUTSA because it is based on the use of misappropriated trade secrets. Even if it is not preempted, Count II fails to adequately allege the third and fourth elements for the tort of intentional interference with contract. Accordingly, Count II is dismissed with prejudice.

### **C. Count III – Intentional Interference with Prospective Economic Advantage**

Defendants' arguments regarding Count III are similar to their arguments with respect to Count II: that the claim for interference with prospective economic advantage must be dismissed because it is preempted by CUTSA and is not adequately pleaded. As with Count II, the Court agrees with Defendants.

Count III contends that Defendants interfered with Ahern's business relationships and potential economic benefits involving Ahern customers and employees. (Doc. 238, ¶ 56.) It first contends that Torres and Allen committed the tort by using "Confidential Information to target Ahern's customers and undercut Ahern's pricing," (*id*., ¶ 57), but (1) nothing indicates what "Confidential Information" is or that it is different from Ahern Confidential Information and (2) customer lists and pricing information were specifically included in the definition of Ahern Confidential Information. Thus, to this extent, Count III is preempted by CUTSA.

The remaining aspects of Count III fail to satisfy the pleading requirements of *Iqbal* and *Twombly*. As the Court explained with respect to this claim as it appeared in the First Amended Complaint:

> To state a claim for intentional interference with prospective economic advantage, Ahern must allege "1) an existing economic relationship or one 'containing the probability of future economic benefit'; 2) knowledge by the defendant of the relationship; 3) acts by defendant designed to disrupt the relationship; 4) actual disruption of the relationship; 5) damages proximately caused by the acts of the defendant." *AccuImage Diagnostics Corp.*, 260 F. Supp. 2d at 956 (*citing Della Penna v. Toyota Motor Sales, U.S.A.*, 902 P.2d 740, 743 n.1 & 750–51 (Cal. 1995)). In addition, "the act must be wrongful by some legal measure other than the fact of interference itself." *Id.* (*citing Della Penna*, 902 P.2d at 751). Thus, Ahern must allege that Defendants' conduct was "independently wrongful." *Id.* (*citing Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 881 (1997)). An act is "independently wrongful" if it is "unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290 (Cal. 2008).

(Doc. 25, pp. 10-11.) And in dismissing this claim from the First Amended Complaint, the Court stated, *inter alia*, that "Ahern ha[d] not alleged that Defendant's conduct was independently wrongful." (*Id*., p. 11.) Nonetheless, Ahern has simply alleged that "Defendants solicited Ahern employees and customers unfairly using disparaging tactics intended to disrupt and impair Ahern's

13

relationships with its customers," (Doc. 238, ¶ 58), which is the same allegation that the Court found insufficient when it considered this claim before. The Court adheres to its conclusion.

For these reasons, Count V is dismissed with prejudice.

### D. Count VII – Unfair Business Practices in violation of the California Business and Professions Code § 17200

EquipmentShare argues that Count VII fails to adequately allege a violation of California's Business & Professions Code. The argument is similar to one the Court rejected when it reviewed the First Amended Complaint, and the Court rejects it again.

The California Business & Professions Code prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (quotations omitted). However, "a practice may be deemed unfair even if not specifically proscribed by some other law." *Id.* The word "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 939 (2003) (*citing Cel-Tech*, 973 P.2d at 544).

Like the First Amended Complaint, the Second Amended Complaint alleges that Defendants:

(1) disparaged Ahern to its current employees and customers,

(2) prepared to "compete with Ahern and [used] Ahern's internal systems under the false pretenses of being loyal employees of Ahern and acting in Ahern's best interests," and

14

(3) failed to "disclose key facts to Ahern, which Allen and Torres were under a duty to disclose[.]"

(Doc. 238, ¶ 89.)  Count VII also alleges (as did the First Amended Complaint) that Defendants engaged in this conduct to "interfere with Ahern's contracts and economic advantage, to sow discord among Ahern's employees through a disparaging solicitation campaign, and to take market share and personnel from Ahern through the use of former Ahern employees who acted against Ahern while still employed by Ahern."  (*Id.* at ¶ 88.)

In challenging this claim in the First Amended Complaint, EquipmentShare argued that these allegations failed to satisfy the requirement that they engage in unlawful or wrongful conduct.  The Court rejected that argument, (Doc. 25, pp. 14-15 & n.7), and EquipmentShare does not explain why the Court should revisit is ruling.  The Court discerns no reason to do so; EquipmentShare's arguments are rejected for the reasons previously stated.[5]

### III. CONCLUSION

EquipmentShare's Motion to Dismiss, (Doc. 279), and Allen's and Torres's Motion to Dismiss, (Doc. 280), are **GRANTED IN PART** and **DENIED IN PART**.  Counts II and III are dismissed with prejudice.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: April 21, 2021                    UNITED STATES DISTRICT COURT

---

[5] In its Reply Suggestions, EquipmentShare argues that Count VII is preempted by CUTSA.  The Court also rejected this argument previously, (Doc. 25, pp. 16-18), and the Court adheres to that decision insofar as Count VII is predicated on actions unrelated to Ahern Confidential Information.

15